UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT DICANDIA,

    Plaintiff,

v.                                    Case No. 8:25-cv-65-VMC-TGW

EXPERIAN INFORMATION SOLUTIONS,
INC., and MIDLAND CREDIT
MANAGEMENT, INC.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration (Doc. # 36), filed on March 4, 2025. Plaintiff Robert DiCandia responded on March 18, 2025. (Doc. # 40). For the reasons that follow, the Motion is granted to the extent that the Court compels arbitration and stays the case pending arbitration as to the claims against Experian only.

**I.**   **Background**

DiCandia initiated this Fair Credit Reporting Act (FCRA) case against Experian and Midland Credit Management, Inc. in state court in late October 2024, alleging that Experian reported inaccurate information on his credit report. (Doc. # 2). On January 9, 2025, Experian removed the case to this

1

Court. (Doc. # 1). On January 15, 2025, the Court entered its fast-track scheduling order, setting expedited discovery and mediation deadlines. (Doc. # 15).

After having obtained an extension, on February 14, 2025, Experian filed its answer, which included an affirmative defense stating: "Plaintiff's claims are barred to the extent that they are subject to an arbitration agreement." (Doc. # 28 at 51). On February 26, 2025, Experian filed an opposed motion to extend the deadlines of the scheduling order until after the Court ruled on a forthcoming arbitration motion (Doc. # 30), which the Court granted in part and denied in part. (Doc. # 38). One week later, Experian filed the instant Motion, seeking to compel arbitration of DiCandia's claims against it. (Doc. # 36).

The facts underlying Experian's Motion are these: in 2023, DiCandia joined CreditWorks, a credit monitoring service with Experian's affiliate, ConsumerInfo.com, Inc. ("CIC"), which does business as Experian Consumer Services ("ECS"). (Id. at 5, 7). CreditWorks' Terms of Service were agreed to by DiCandia. (Id.). The Terms of Service included an arbitration provision that covered ECS and its "affiliates," which includes Experian. (Id.; Doc. # 36-1 at 17).

Specifically, the arbitration provision provides:

> **ECS and you agree to arbitrate all disputes and claims between us** arising out of or relating to this Agreement to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law.

(Doc. # 36-1 at 16) (emphasis added). "For purposes of this arbitration provision, references to 'ECS,' 'you,' and 'us' shall include our respective parent entities, subsidiaries, **affiliates** (including, without limitation, our service providers), agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as all authorized or unauthorized users or beneficiaries of Services and/or Websites or information under this or prior Agreements between us relating to Services and/or Websites." (Id. at 17) (emphasis added).

The arbitration agreement also contains the following provision:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of

3

>     this Agreement including, but not limited to any
>     claim that all or any part of this arbitration
>     provision or Agreement is void or voidable.

(Id. at 17-18). "The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA'), as modified by this Agreement, and will be administered by the AAA." (Id. at 17).

The Motion is fully briefed (Doc. # 40), and ripe for review.

## II. Legal Standard

In enacting the Federal Arbitration Act (FAA), Congress set arbitration agreements on equal footing with all other contracts. 9 U.S.C. § 2. Under the FAA, pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. The FAA reflects a "liberal federal policy favoring arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011), but courts can only require parties to arbitrate if the parties have agreed to do so. Hanover Ins. Co. v. Atlantis Drywall & Framing LLC, 611 F. App'x 585, 588 (11th Cir. 2015); see also Moses H. Cone Mem'l Hosp. v.

4

Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (discussing the strong federal policy supporting arbitration). As such, arbitration agreements must be "rigorously enforce[d]" by the courts according to their terms. Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1329-30 (11th Cir. 2014).

"[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2-4). "There are three factors courts consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." Senti v. Sanger Works Factory, Inc., No. 6:06-cv-1903-ACC-DAB, 2007 WL 1174076, at *2 (M.D. Fla. Apr. 18, 2007).

State law generally governs whether an enforceable contract or agreement to arbitrate exists. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir.

5

2005); Dale v. Comcast, 498 F.3d 1216, 1219 (11th Cir. 2007) (explaining that, in reviewing the validity of arbitration agreements, contract defenses such as fraud, duress, or unconscionability are governed by state law). Finally, "questions of waiver based on a party's litigation conduct are for the courts to resolve." Grigsby & Assocs., Inc. v. M Sec. Inv., 664 F.3d 1350, 1354 (11th Cir. 2011).

### III. Analysis

DiCandia does not argue that he did not agree to the arbitration agreement or that the arbitration agreement is somehow invalid or that his claims fall outside the scope of the arbitration agreement. (Doc. # 40). For good reason. The Court agrees with Experian that the arbitration provision is valid, covers Experian as an "affiliate" of ECS, and requires arbitration of DiCandia's claim against Experian.

Instead, DiCandia argues that Experian "has acted inconsistently with its right to compel arbitration" and thus waived its right to arbitration. (Id. at 3). DiCandia emphasizes Experian's decision to remove the case to this Court, rather than moving to compel arbitration in state court. (Id.). He also notes that Experian filed its Motion about eight weeks after removal, and over two weeks after

filing its answer and after some informal settlement discussions. (Id.).

"There's no set rule as to what constitutes waiver of an arbitration agreement, so [courts] review whether a waiver has occurred based on the facts of each case." Warrington v. Rocky Patel Premium Cigars, Inc., No. 22-12575, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023). "A key factor in deciding this is whether a party has substantially invoked the litigation machinery prior to demanding arbitration." Id. (quoting Gutierrez v. Wells Fargo Bank, NA, 889 F.3d 1230, 1236 (11th Cir. 2018)). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right." Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022). The Court should not consider prejudice. Id. at 417-19. Rather, the question is: did Experian "knowingly relinquish the right to arbitrate by acting inconsistently with that right?" Id. at 419; see also Bedgood v. Wyndham Vacation Resorts, Inc., 88 F.4th 1355, 1369 (11th Cir. 2023) ("To determine whether a party has defaulted for Section 3 purposes, a court must decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." (citation and internal quotation marks omitted)).

The answer is no. Although Experian removed the case instead of seeking to compel arbitration in state court and waited a few weeks to move to compel in this Court, these actions do not constitute a waiver of the right to arbitration. Mere removal to this Court is not enough to support a finding of waiver. See Derriman v. Mizzen & Main LLC, 710 F. Supp. 3d 1129, 1137 (M.D. Fla. 2023) ("Plaintiff asks this Court to apply a bright-line rule whereby removal constitutes waiver of arbitration rights . . . . [R]emoval by itself is not automatically enough.").

Also, the delay in moving to compel arbitration was only eight weeks from removal to this Court, so is not excessive. This is not a case in which Experian litigated on the merits for multiple months, participated in mediation or another hearing, or filed a dispositive motion before moving to compel arbitration. See e.g., Morgan, 596 U.S. at 414-15 ("Sundance initially defended itself against Morgan's suit as if no arbitration agreement existed. Sundance first moved to dismiss the suit as duplicative of a collective action previously brought by other Taco Bell employees . . . . Sundance then answered Morgan's complaint, asserting 14 affirmative defenses — but none mentioning the arbitration agreement. Soon afterward, Sundance met in a joint mediation

8

with the named plaintiffs in both collective actions. The other suit settled, but Morgan's did not . . . . And then — nearly eight months after the suit's filing — Sundance changed course. It moved to stay the litigation and compel arbitration under Sections 3 and 4 of the FAA."); Soriano v. Experian Info. Sols., Inc., No. 2:22-cv-197-SPC-KCD, 2022 WL 17551786, at *1 (M.D. Fla. Dec. 9, 2022) (finding waiver where during "the first four months this case was pending, Experian filed an answer, an amended answer, exchanged discovery, participated in mediation, submitted a case management report where Experian requested a jury trial, and attended a pretrial conference" before filing a motion to compel arbitration); Gaudreau v. My Pillow, Inc., No. 6:21-cv-1899-CEM-DAB, 2022 WL 3098950, at *8 (M.D. Fla. July 1, 2022) (finding waiver where defendant MyPillow "answered not one, but two complaints filed by Guadreau against it without mentioning its purported right to arbitrate" and "only sought to vindicate its purported right to arbitrate after actively participating in this litigation for eight months").

While Experian could have moved more quickly, the Court cannot conclude that Experian's short delay while this case is still in its infancy was inconsistent with the right to arbitrate. See Amargos v. Verified Nutrition, LLC, 653 F.

9

Supp. 3d 1269, 1276 (S.D. Fla. 2023) (finding under the totality of the circumstances "that Defendant's participation was not significant enough to support a finding that it acted inconsistently with its contractual right to arbitrate" where the case was "in its infancy and limited judicial resources have been employed" and "early in the proceedings, Defendant advised Plaintiff by email of its intent to seek arbitration and filed its Motion soon thereafter").

Indeed, it is clear that Experian did not intend to relinquish its right to arbitration. In its answer, Experian included an affirmative defense that DiCandia's "claims are barred to the extent that they are subject to an arbitration agreement." (Doc. # 28 at 51); see Lamonaco v. Experian Info. Sols., Inc., No. 6:23-cv-1326-PGB-LHP, 2024 WL 1703112, at *8 (M.D. Fla. Apr. 19, 2024) (finding waiver where "Experian filed an answer with no mention of arbitration months before seeking to compel it"). Furthermore, a few days before filing its Motion, Experian moved to extend the deadlines of the Court's fast-track scheduling order pending determination of this Motion. (Doc. # 30). Although the Court denied that request in part (Doc. # 38), Experian did seek to limit its participation in discovery because of its intent to proceed

10

in arbitration. Under the totality of the circumstances, Experian has not waived its right to arbitration.

Thus, the Motion is granted. DiCandia must arbitrate his claim against Experian and this case will be partially stayed, only as to Experian, during that time.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration (Doc. # 36) is **GRANTED.**

(2) The case is referred to arbitration as to the claim against Experian only.

(3) The case as to Experian only is **STAYED.** The case remains open as to the claim against the Defendant Midland Credit Management.

(4) Plaintiff and Experian are directed to file a joint status report by **June 23, 2025,** and every 90 days thereafter.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 25th day of March, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE